IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CRYSTAL R. PERRY,**

      **Plaintiff,**

  v.                                              Civil Action 2:15-cv-2418
                                                     Judge Michael H. Watson
                                                     Magistrate Judge Jolson

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff Crystal R. Perry filed this action under 42 U.S.C. §§ 405(g) and 1383(c) seeking review of the denial of her application for disability insurance benefits and supplemental social security income by the Commissioner of Social Security (the "Commissioner"). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's statement of errors be **OVERRULED** and judgment be entered in favor of the Commissioner.

## I.  BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental social security income on October 10, 2008, and her claims were denied. (Doc. 13-3, Tr. 104–05, PAGEID #: 167–68). Roughly three years later, she filed her current applications for disability insurance benefits and supplemental social security income, alleging disability beginning on September 9, 2011. (*Id.* at PAGEID #: 168–69). The Commission initially denied her claim on November 29, 2011 (*id.* at PAGEID #: 169–70) and on reconsideration on May 14, 2012 (*id.* at PAGEID #: 199–200).

1

Plaintiff then requested a hearing. (Doc. 13-4, Tr. 191, PAGEID #: 255). Administrative Law Judge Paul Yerian ("the ALJ") held a hearing on May 29, 2013, and a supplemental hearing on October 8, 2013. (Doc. 13-2, Tr. 17-34, PAGEID #: 79–96). Plaintiff was represented by counsel at both hearings. (*See id.* at PAGEID #: 105).

## A. Relevant Medical Background

### 1. Physical Health Records

The primary physical health records at issue here are those concerning Plaintiff's morbid obesity and urinary incontinence. Plaintiff is 5'7" with a fluctuating weight, ranging from 334 to 350 pounds. (*See* Doc. 13-8, Tr. 821, PAGEID #: 889; *id.* at PAGEID #: 1156; *id.* at PAGEID #: 1164; Doc. 13-9, Tr. 1327, 1396; *id.* at PAGEID #: 1409). At these weights, Plaintiff has a body mass index of around 53 to 55. (*Id.* at PAGEID #: 1396; *id.* at PAGEID #: 1622).

On January 9, 2013, Plaintiff went to the emergency room ("ER") for "[u]rinary incontinence and abdominal pain," which had been persisting "since the middle of December." (Doc. 13-10, Tr. 1964, PAGEID #: 2034). Plaintiff reported to the ER physician, Dr. Elizabeth Funk, the possibility of pregnancy and stated that she experienced the same symptoms with past pregnancies. (*Id.*; *see also id.* at PAGEID #: 2036 ("[T]he patient was actually very concerned she was pregnant . . . .")). Plaintiff had a negative pregnancy test and deferred an internal examination. (*Id.* at PAGEID #: 2035–36). Dr. Funk's impression was urinary incontinence, and she advised Plaintiff to follow-up with her primary care physician and a urologist. (*Id.* at PAGEID #: 2036).

2

### 2. Mental Health Records

The majority of the mental health records in this case are from Consolidated Care, where Plaintiff first received care in June of 2010. (Doc. 13-8, Tr. 813, PAGEID #: 881). At that time, Plaintiff was diagnosed with a depressive disorder not otherwise specified ("NOS") as well as post-traumatic stress disorder, and was assigned a global assessment functioning ("GAF") of 31 when admitted and a score of 50 when discharged. (*Id.*) She was assigned different GAF scores at others times. For example, she was assigned a GAF score of 42 in 2011 (*id.* at PAGEID #: 860) and a score of 43 in 2013 (Doc. 13-10, Tr. 2334, PAGEID #: 2404).

A number of doctors, therapists, and nurses treated Plaintiff during her time at Consolidated Care, including Mark Coakley, Professional Counselor-Clinical Resident, whose opinion is relevant to this appeal. Mr. Coakley began seeing Plaintiff in October of 2011 and continued to see her at least until the ALJ issued his opinion. (Doc. 13-8, Tr. 792-93, PAGEID #: 860–61). Mr. Coakley reported Plaintiff had problems with self-mutilation, depression, and anxiety. (*Id.* at PAGEID #: 854; *id.* at PAGEID #: 862).

On May 3, 2013, after Plaintiff had filed for disability benefits, Mr. Coakley completed an residual functioning capacity ("RFC") questionnaire. He found Plaintiff to have no impairments related to social interaction and mild or moderate limitations related to sustained concentration and persistence. (Doc. 13-10, Tr. 2334, PAGEID #: 2158). As for adaptation abilities, Mr. Coakley found Plaintiff not impaired in most categories, moderately impaired in her ability to respond appropriately to changes in work setting, and mildly impaired in her abilities to behave predictably, reliably, and in an emotionally stable manner and to tolerate customary work pressures. (*Id.* at PAGEID #: 2158–59). Mr. Coakley additionally found that

3

Plaintiff was likely to miss five or more days due to her condition and her condition would deteriorate "if placed under stress, particularly the stress of an hour per day, 5 day per week job." *Id.* at PAGEID #: 2159; *see also id.* ("Client is overwhelmed by chronic stress which worsens symptoms of depression and anxiety.").

**B. Plaintiff's Hearing Testimony**

Plaintiff was 27 years old when she testified at the administrative hearing on May 29, 2013. (Doc. 13-2, Tr. 60, PAGEID #: 122). She testified about a number of issues, including two topics relevant to this appeal: Her mental health and urinary incontinence. Regarding her mental health, she testified that she has trouble with focus, concentration, and memory; forgets doctor's appointments and to take her medication; has suicidal thoughts, daily crying spells and daily anxiety attacks; and has problems getting along with people in general. (*Id.* at PAGEID #: 133–35). She also testified that she sees a counselor at Consolidated Care every one to two weeks. (*Id.* at PAGEID #: 144).

Regarding urinary incontinence, Plaintiff and her lawyer had the following exchange:

Q. Okay, and some of your records talked about some problems with difficulty with your bladder?
A. Yes.
Q. Tell me about that. Is that something that's still going on or have they been able to control that or . . .
A. It still goes on. I have not seen a specialist for it yet. I have to carry extra clothes with me.
Q. And do you have times where you're wetting on yourself? Is that --
A. I'm sorry.
Q. Do you have times where you're dribbling or wetting on yourself?
A. Yes.
Q. Is that why you're taking extra clothes? How often is that happening?
A. Daily.
Q. Any things that you notice that tend to cause that to become more likely?
A. No, I know the cough like if I cough real bad that usually makes it worse.

4

(*Id.* at PAGEID #: 145).

## C. The ALJ's Decision

The ALJ found, first, that Plaintiff met the special earnings requirements of the Act through March 31, 2012, but not thereafter. (Doc. 13-2, Tr. 20, PAGEID #: 82). In the second step of the sequential evaluation process, the ALJ concluded that Plaintiff had the following severe impairments: asthma, diabetes mellitus, morbid obesity, chronic lumbosacral strain, chrondromalacia, status post radio frequency ablation, dysthymia, a post-traumatic stress disorder, and an anxiety disorder. (*Id.*). The ALJ also considered Plaintiff's urinary incontinence but found it did not meet the durational requirement. (*Id.*). The ALJ found that Plaintiff's impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments. (*Id.* at PAGEID #: 83).

The ALJ then assigned the following RFC:

> [C]apacity to perform sedentary work . . . except the claimant can occasionally climb ramps/stairs, stoop, kneel, crouch, crawl. The claimant can frequently be exposed to extremes of heat, humidity, fumes, dusts, odors, and poorly ventilated areas. The claimant can perform work activity that does not include unprotected heights, dangerous machinery, and climbing ladders, ropes, and scaffolds. Mentally, the claimant can perform simple repetitive tasks where there are infrequent changes in duties and processes, do not involve a fast assembly line pace or strict production quotas, and do not require more than occasional contact with others.

(*Id.* at PAGEID #: 86).

The ALJ ultimately found Plaintiff could perform jobs existing in the national economy in significant numbers, and Plaintiff thus was not disabled within the meaning of the Social Security Act. (*Id.* at PAGEID #: 96). The ALJ denied benefits on January 24, 2014. (*Id.*) That decision became the Commissioner's final decision on April 24, 2015, when the Appeals

Council denied Plaintiff's request for review. (*Id.* at PAGEID #: 63–65). Plaintiff then brought this action. (*See* Doc. 13 (administrative record); Doc. 18 (statement of errors); Doc. 23 (the Commissioner's response); Doc. 25 (Plaintiff's reply)).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. Nat'l Labor Relations Bd.*, 296 F.3d 384, 395 (6th Cir. 2002).

## III. DISCUSSION

This case presents three issues for review: (1) Whether the ALJ properly considered and used Mr. Coakely's opinion; (2) whether the ALJ properly determined that Plaintiff's urinary incontinence failed to meet the durational requirement in order to be classified as severe; and (3) whether the ALJ reasonably considered obesity.

**A. Mr. Coakley's Opinion**

Plaintiff challenges how the ALJ considered Mr. Coakley's opinion. In particular, Plaintiff alleges that the ALJ: (1) incorrectly classified Mr. Coakley's opinion as "nonmedical"; (2) improperly limited Mr. Coakley's opinion as relevant only to Plaintiff's ability to function; and (3) failed to evaluate fully Mr. Coakley's opinion. (Doc. 18 at 8–13).

**1. Classification of Mr. Coakley's Opinion**

Social Security Administration (SSA) regulation 20 C.F.R. § 404.1513 classifies the various types of evidence—medical and nonmedical—that a claimant may present in order to establish that he or she is disabled and entitled to benefits. To establish a disability, the SSA requires that the claimant present evidence from "acceptable medical sources." *Id.* at § 404.1513(a). Acceptable medical sources include "[l]icensed physicians[,]" and "[l]icensed or certified psychologists." *Id.* at § 404.1513(a)(1-2); *see also* SSR 06-03p. Here, the parties agree Mr. Coakley, as a counselor, is not an "acceptable" medical source. (*See* Docs. 18 at 8; Doc. 23 at 2–3). Instead, he is what the regulations classify as an "other source." *Id.* at § 404.1513(d)(1). "Other sources include, but are not limited to . . . medical sources not listed [as acceptable medical sources] (for example, nurse practitioners, physicians' assistants, . . . [and] therapists)[.]" *Id.* at § 404.1513(d)(1). Related to these classifications, the regulations make clear that medical opinions are "statements from physicians and psychologists or other acceptable medical sources . . . ." 20 C.F.R. § 404.1527(a)(2) (emphasis added).

In classifying Mr. Coakley's opinion, the ALJ followed these regulations. He first noted that Mr. Coakley falls into the "other source" category rather than the "acceptable medical source" one. (*Id.* at PAGEID #: 87). He then defined Mr. Coakley's opinion not as a "medical

7

opinion" pursuant to 20 C.F.R. §§ 404.1513, 416.927, but as an "other source" opinion. (*Id.*) Accordingly, the ALJ correctly classified Mr. Coakley's opinion, and Plaintiff's argument on this point is rejected.

### 2. Use of Mr. Coakley's Opinion

Plaintiff next claims that the ALJ failed to appreciate the extent to which Mr. Coakley's opinion could affect the RFC determination. In particular, Plaintiff attacks the ALJ for reciting part, but not all, of the applicable standard. (Doc. 18 at 9). The ALJ noted Mr. Coakley's opinion should be considered in order to understand how Plaintiff's impairment affects her ability to work but then failed to note that the opinion also could be used to evaluate the severity of Plaintiff's impairment. (Doc. 13-2, Tr. 25, PAGEID #: 87). As an initial matter, the ALJ cited the correct statutes governing "other source" opinions. (*Id.*) Moreover, the ALJ expressly noted that he considered the opinion "in accordance with SSR 06-3p." (*Id.*) Throughout the decision, the ALJ considered Mr. Coakley's opinion in light of a number of factors listed in this regulation. (*See, e.g.*, *id.* at PAGEID #: 87, 88, 93). That consideration is sufficient under the law. *See Prince v. Astrue*, No. 2:10-cv-00008, 2011 WL 1124989, at *4 (S.D. Ohio Jan. 11, 2011) (noting that an ALJ is not required to consider expressly every factor in 20 C.F.R. § 404.1527(d)(2) within the written decision") (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216 (6th Cir. 2010)). Accordingly, the Court finds that the ALJ properly evaluated Mr. Coakley's opinion.

The Commissioner also argues that to the extent the ALJ erred in not fully using Mr. Coakley's opinion, the error was harmless. (*See* Doc. 23 at 4). The Court agrees. The ALJ determined that Plaintiff had the severe mental impairments of dysthymia, post-traumatic stress disorder, and anxiety disorder. (Doc. 13-2, Tr. 20, PAGEID #: 82). Nothing in Mr. Coakley's opinion or treatment notes indicates severe mental impairments beyond what the ALJ listed, and

Plaintiff has offered no evidence to undermine the ALJ's severity determinations. Accordingly, even if the ALJ did not consider Mr. Coakley's opinion for purposes of evaluating the severity of Plaintiff's impairments—which the Court finds he in fact did—any error was harmless.

### 3. Weight Given to Mr. Coakley's Opinion

Finally, Plaintiff claims the ALJ inappropriately "wrote off" Mr. Coakley's opinion. (Doc. 18 at 10). "An ALJ has discretion to determine the proper weight to accord opinions from other sources.'" *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). In this instance, the ALJ assigned "little weight" to Mr. Coakley's opinion. And while Plaintiff is correct that the ALJ's summary of his analysis is contained in only one paragraph, the ALJ considered Mr. Coakley's opinion elsewhere in the decision. (*See, e.g.*, Doc. 13-2, Tr. 25, 26, 31, PAGEID #: 87, 88, 93). Throughout the decision, the ALJ: Acknowledged the treatment relationship (*id.* at (noting Mr. Coakley was Plaintiff's counselor); examined the GAF scores Mr. Coakley assigned to Plaintiff (*id.* at PAGEID #: 88 (detailing and analyzing Plaintiff's various GAF scores); and considered Plaintiff's treatment at Consolidated Care under Mr. Coakley's supervision (*id.* at 93 (analyzing care and citing to medical records)).

In addition, the ALJ concluded that Mr. Coakley's opinion was inconsistent with other aspects of the record, including Mr. Coakley's own treatment notes. (*Id.* at PAGEID #: 87). For example, Mr. Coakley opined in May 2013 that Plaintiff would have no limitations in social functioning; mild limitations in most areas of sustaining concentration and persistence; and little to no impairment in almost all areas of adaptation. (Doc. 13-10, Tr. 2088–89, PAGEID #: 2158–59). He further opined that Plaintiff would have only moderate limitations in her ability to perform and complete work tasks in a normal work day or work week at a consistent pace, moderate impairment of her ability to perform at production levels expected by most employers,

9

and moderate impairment in her ability to respond appropriately to changes in work setting. (*Id*.) Despite these findings, Mr. Coakley concluded:  Plaintiff would miss five or more days of work per month due to her impairments; her condition would deteriorate under the stress of a full-time job, and she was overwhelmed by chronic stress, which worsened her symptoms of depression and anxiety. (*Id.* at PAGEID #: 2159).

The ALJ also partially discounted Mr. Coakley's opinion because it relied "quite heavily on [Plaintiff's] subjective complaints," which the ALJ found not entirely credible. (Doc. 13-2, Tr. 25, PAGEID #: 87). On this point, the ALJ referred to other parts of Mr. Coakley's opinion where he noted inconsistencies between Plaintiff's testimony and the medical records. (*See, e.g.*, PAGEID #: 93). The ALJ also considered that Plaintiff's treatment at Consolidated Care with Mr. Coakley was sporadic and conservative, consisting of only a few appointments each year from 2011 to 2013. (*See* Doc. 13-8, Tr. 1084–85, PAGEID #: 1152–53; Doc. 13-9, Tr. 1362–65, PAGEID #: 1431–1434; Doc. 13-10, Tr. 2084–85, PAGEID #: 2154-55; *id*. at PAGEID #: 2390, 2394–97, 2405–06). Further, the ALJ noted that after Plaintiff was discharged from Consolidated Care in June of 2013, she did not seek additional treatment until September of 2013, and she sought no further treatment after that date. (Doc. 13-2, Tr. 31, PAGEID #: 93). *See Blacha v. Sec'y of HHS*, 927 F.2d 228, 231 (6th Cir. 1991) (holding that a failure to seek treatment for a condition is a factor that may be considered in assessing credibility).

Finally, the ALJ's mental RFC opinion is supported by the opinions of the state agency reviewing physicians who considered Plaintiff's mental health records. (Doc. 13-2, Tr. 24, PAGEID #: 86). The ALJ's reliance on these experts was appropriate. *See* 20 C.F.R. § 404.1527(e)(2)(i) (State agency consultants are "highly qualified physicians and psychologists

10

who are also experts in Social Security disability evaluation."); *see also Vorholt v. Comm'r of Soc. Sec.*, 409 F. App'x 883, 887 (6th Cir. 2011) (holding that the ALJ was justified in relying on the opinion of the state agency physician). All of this, taken together, constitutes substantial evidence for the ALJ's decision. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.").

**B. Urinary Incontinence**

Plaintiff next challenges the ALJ's conclusion that Plaintiff's urinary incontinence did not satisfy the durational requirement and thus was not a severe impairment. (Doc. 18 at 13-15). To satisfy the durational requirement, an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. On this issue, the ALJ explained:

> At the hearing, [Plaintiff] testified to having problems with urinary incontinence (Exhibit 38F). However, the record indicates that this is a recent issue (i.e., June 2013). There are no ongoing treatment records relative to this condition and nothing to suggest that this problem will continue to last at least 12 months.

(Doc. 13-2, Tr. 20, PAGEID #: 82).

Plaintiff argues that the ALJ failed to recognize that her urinary incontinence dated back to January 9, 2013, more than a year before the ALJ's decision. (Doc. 18 at 14-15). In support, she relies on her visit to the ER on January 9, 2013, when she saw Dr. Funk. During that visit, Plaintiff reported "[u]rinary incontinence and abdominal pain," which had been persisting "since the middle of December." (Doc. 13-10, Tr. 1964, PAGEID #: 2034). The treatment notes from that visit make clear that Plaintiff was concerned she was pregnant because she had experienced

11

similar symptoms with past pregnancies. (*Id.*; *see also id.* at PAGEID #: 2036 ("[T]he patient was actually very concerned she was pregnant . . . .")). Plaintiff had a negative pregnancy test, and she chose not to have an internal examination. (*Id.* at PAGEID #: 2035–36). Dr. Funk's impression was urinary incontinence, and she advised Plaintiff to follow-up with her primary care physician and a specialist. (*Id.* at PAGEID #: 2036).

Over the next six months, however, Plaintiff saw her primary care physician approximately ten times. According to the medical records, Plaintiff did not complain of urinary symptoms during any of the visits; denied pain while urinating or the urge to urinate at night; and was not treated in any way for urinary incontinence. (*See generally* Doc. 13-9, Tr. 1698–1706, PAGEID #: 1767-75; *id.* at PAGEID #: 1783–1800; Doc. 13-10, Tr. 2000–08, PAGEID #: 2070–78; *id.* at PAGEID #: 2079–87; *id.* at PAGEID #: 2185–93; *id.* at PAGEID #: 2195–2235). Further, the record shows no evidence that Plaintiff consulted a urologist.

In addition, Plaintiff's testimony did not provide a basis to conclude that her urinary incontinence had persisted or could be expected to persist for a continuous period of at least 12 months. At the hearing, she stated that she had not seen a specialist "yet," and at no point during her testimony did she describe how long the problem had persisted. (Doc. 13-2, Tr. 83, PAGEID #: 145). Accordingly, substantial evidence supports the ALJ's conclusion that Plaintiff's urinary incontinence did not satisfy the durational requirement to be classified as severe.

Finally, Plaintiff argues that the ALJ had an incorrect last-insured date and that this error affected his severity determination. (Doc. 18 at 14–15). However, Plaintiff applied for both disability insurance benefits and supplemental security income. Even if the ALJ had the wrong last-insured date for the purposes of disability insurance benefits, he evaluated Plaintiff's case up until the date of his decision due to her supplemental security income claim, (Doc. 13-2, Tr. 34, PAGEID #:

96) (determining that Plaintiff had not been under a disability from September 9, 2011 through the date of the ALJ's decision)), and the Court finds this argument unpersuasive.

**C. Obesity**

Plaintiff next argues the ALJ did not consider her obesity as required by the regulations. Social Security Ruling 02-01p, 2000 WL 628049 (Sept. 12, 2002), explains the Administration's policy and protocol on evaluating obesity. "Obesity is a complex, chronic disease characterized by excessive accumulation of body fat." SSR 02-01p. The Ruling further recognizes obesity as "a risk factor that increases an individual's chances of developing impairments in most body systems" and notes that obesity "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body symptoms." *Id*. at *3. Additionally, "obesity may also cause or contribute to mental impairments such as depression." *Id*. Despite obesity being a risk factor, the Ruling cautions that it "does not mean that individuals with obesity necessarily have any of these impairments." *Id*. The Ruling directs ALJs to consider obesity in determining (1) whether a claimant has a medical impairment, (2) whether that medical impairment is severe, (3) whether the claimant's impairment meets or equals a listed impairment, and (4) whether the claimant could perform her past work or other work existing in significant numbers. *Id.*

Here, the ALJ considered Plaintiff's obesity more than once. The ALJ found it was a serious impairment. (Doc. 13-2, Tr. 20, PAGEID #: 82). The ALJ further remarked:

> While there no longer is a listing for obesity, the claimant's weight has been carefully considered within the parameters of Social Security Ruling 02-0lp (*see also* Listings 1.00Q, 3.00I and 4.00I). While it is recognized that the claimant's weight aggravates her ability to stand and walk for extended periods of time, in light of the objective findings, it does not reasonably appear that the extent of her obesity, even when considered in combination with her other documented impairments, meets or equals a listed impairment. In this case, the

13

>claimant's weight does not appear to seriously impact on her ability to walk in an effective manner or to reduce her functioning to the level contemplated by any listing.

(*Id.* at PAGEID #: 83).

Also, in his RFC analysis, the ALJ thoroughly considered the numerous ailments that obesity can exacerbate, like shortness of breath, heart palpitations, an inability to stand for long periods of time, and inability to walk long distances, and knee pain. (*See generally id.* at PAGEID #: 89-91). Finally, the ALJ relied on medical opinions noting Plaintiff's obesity. (*Id.* at PAGEID #: 90-93 (citing *e.g.*, Doc. 13-8, Tr. 850, PAGEID #: 918; *id.* at PAGEID #: 922, 1054)). The Sixth Circuit has found such reliance relevant when analyzing an ALJ's consideration of obesity. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411–12 (6th Cir. 2008) (upholding denial of benefits where ALJ "made explicit mention of [plaintiff's] obesity in his finding of facts" and credited the opinions of experts who considered plaintiff's obesity). Accordingly, the ALJ's consideration of obesity was sufficient.

## IV. RECOMMENDED DISPOSITION

For the reasons stated, it is **RECOMMENDED** that the Plaintiff's statement of errors be **OVERRULED** and that judgment be entered in favor of the Commissioner.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations

to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:  June 30, 2016                                          /s/ Kimberly A. Jolson
                                                              KIMBERLY A. JOLSON
                                                              UNITED STATES MAGISTRATE JUDGE